**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

|  |  |  |
|---|---|---|
| IN THE MATTER OF B & C SEAFOOD LLC, AS OWNER OF THE "F/V TOOTS II", A 52' STEEL-HULLED FISHING VESSEL, FOR EXONERATION FROM AND LIMITATION OF LIABILITY | : : : : : : : : | Civil No. 18-1560 (RBK/JS)  **OPINION** |

**KUGLER**, United States District Judge:

This matter comes before the Court on the Motion (Doc. No. 79) of B&C Seafood LLC ("B&C") to terminate its maintenance and cure obligations to Kirk and Jesse Sullivan.[1] Because there is at minimum a genuine dispute of material fact as to whether the Sullivans have reached the point of maximum medical improvement, B&C's Motion is **DENIED**.

**I.     BACKGROUND**

The present Motion arises from a larger litigation in which B&C is seeking to limit its liability for a ship collision. According to B&C's Complaint (Doc. No. 1 ("Compl.")), this collision occurred on October 6, 2017, when the M/V Oleander, a container vessel, collided with the F/V Toots II, a fishing vessel owned by B&C. (Compl. at ¶ 5). At the time of the collision, Jesse and

---

[1] B&C styles its Motion as one for a judicial declaration that it is relieved from its obligation to pay maintenance and cure to the Sullivans. In the alternative, B&C asks for a judicial declaration that an ambiguity exists in the Sullivans' medical records such that B&C is not presently entitled to terminate their maintenance and cure payments. (Doc. No. 79-9 at 2). Despite this odd styling, because the effect of granting B&C's preferred relief would be to terminate the Sullivans' maintenance and cure payments, the Court construes the Motion as one to terminate maintenance and cure. As explained below, pre-trial motions to terminate maintenance and cure are effectively motions for summary judgment. Consequently, any subsequent motions in this vein should be styled as motions for summary judgment and should be filed in compliance with Local Civil Rule 56.1. While the filings for the present Motion do not comply with Rule 56.1, the Court exercises its discretion not to enforce the rule's requirements, both to avoid any possible unfairness to the parties and because the Motion is clearly meritless.

Kirk Sullivan, twin brothers, were crewmembers of the F/V Toots II. (Doc. No. 13 at 6, ¶ 4; Doc. No. 14 at 6, ¶ 4; Doc. No. 79-3 at 54).

Since the collision, both brothers have been receiving treatment for Post-Traumatic Stress Disorder ("PTSD") from G. Christopher Turner, Ph.D., a licensed therapist. (Doc. No. 86-2 at ¶¶ 1–2). In a January 18, 2018 letter to the Sullivans' counsel, Dr. Turner explains that he is administering ongoing psychological treatment for the brothers' PTSD, but that the traumatic effects of the collision will permanently prevent them from ever returning to work as commercial fishermen. (Doc. No. 79-2 at 2–3). Similarly, the Sullivans' expert, Joseph C. Napoli, M.D., filed reports on May 1, 2019 stating that the brothers' PTSD is permanent. (Doc. No. 79-3 at 61; Doc. No. 79-4 at 62). Both Dr. Turner and Dr. Napoli advise that continued psychological treatment is necessary to address the Sullivans' PTSD symptoms. (Doc. No. 79-3 at 62; Doc. No. 79-4 at 65; Doc. No. 86-2 at ¶ 4).

B&C's expert, William Barr, Ph.D., paints a different picture in his reports on the Sullivans' condition, filed December 13, 2018. While Dr. Barr agrees that the Sullivans are suffering from PTSD as a result of the collision, he believes there is only a 10-20% chance that they will require long-term treatment for chronic PTSD, due to the beneficial effects of the treatment they have received so far. (Doc. No. 79-5 at 5–6; Doc. No. 79-6 at 5–6). Further, he asserts that "[t]here are no indications that either of them will suffer from long-term psychological effects on their social and occupational functioning." (Doc. No. 79-5 at 6; Doc. No. 79-6 at 6).

## II. LEGAL STANDARD

Under general maritime law, maintenance and cure is an "ancient right" vessel owners owe to seamen injured in the course of their duties at sea. *O'Connell v. Interocean Mgmt. Corp.*, 90 F.3d 82, 84 (3d Cir. 1996) (internal quotation omitted). Maintenance is "the living allowance for

a seaman while he is ashore recovering from injury or illness," while cure "is payment of medical expenses incurred" in treating the injury or illness. *Deisler v. McCormack Aggregates, Co.*, 54 F.3d 1074, 1079 (3d Cir. 1995). The shipowner's obligation to pay maintenance and cure "is independent of the shipowner's negligence or even the seaman's own negligence." *O'Connell*, 90 F.3d at 84.

Assessing whether maintenance and cure payments must continue is a "medical rather than legal question." *Halcomb v. Kimberly Clark Tissue Co.,* No. 99-1092, 2000 WL 1802071, at *1 (S.D. Ala. May 31, 2000) (citing *Breese v. AWI, Inc.,* 823 F.2d 100, 104 (5th Cir. 1987)). All doubts must be "resolved in favor of the seaman." *Vaughan v. Atkinson*, 369 U.S. 527, 532 (1962); *see also Tullos v. Res. Drilling, Inc.*, 750 F.2d 380, 388 (5th Cir. 1985) (noting that a medical determination that terminates the right to maintenance and cure . . . should be unequivocal").

Given the prerequisite of factual certainty, a pre-trial motion to terminate maintenance and cure obligations should be treated like a motion for summary judgment. *McNeil v. Jantran, Inc.,* 258 F.Supp.2d 926, 930 (W.D. Ark. 2003). Thus, the moving party may only prevail on such a motion if it "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Matsushida Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968)). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. *Anderson,* 477 U.S. at 248. Because fact and credibility

determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in its favor. *Id.* at 255; *Matsushida,* 475 U.S. at 587.

## III. DISCUSSION

B&C's argument that it is no longer obliged to pay maintenance and cure rests on two premises: (1) that the law does not require shipowners to make such payments once the seaman's condition is determined to be permanent such that he cannot return to work; and (2) that the Sullivans have conceded that their PTSD is permanent and that they cannot return to work. (Doc. No. 79-9 ("B&C Brief") at 7–9). Neither premise is fully accurate.

To start, the shipowner's maintenance and cure obligation lasts until the seaman is cured or reaches maximum medical improvement ("MMI"). *Deisler*, 54 F.3d at 1079. MMI is the point at which the seaman is either cured, or at which no further improvement in the seaman's medical condition is reasonably expected. *O'Connell*, 90 F.3d at 84. Because the focus is on the possibility of improvement, a seaman with a permanent condition may still be entitled to maintenance and cure, so long as further treatment would reduce his condition's severity. *See In re RJF Int'l Corp.*, 354 F.3d 104, 107 (1st Cir. 2004) (holding that seaman suffering from permanent anoxic brain injury remained entitled to maintenance and cure because he could make cognitive improvement and permanently improve muscle ailments as a result of treatment).

Rather, the key issue is whether continued treatment will be truly "curative," meaning that it will improve the seaman's condition, or merely palliative, meaning that it will only alleviate the seaman's symptoms without addressing the underlying condition. *Id*. (describing a "fuzzy boundary between improvement and palliation"); *see also Whitman v. Miles*, 387 F.3d 68, 71–73 (1st Cir. 2004) (finding that seaman was not entitled to continuing maintenance and cure where her multiple sclerosis ("MS") was permanent and there was "no issue of genuine material fact that

[her] treatment would, at best, slow or arrest the progression of her MS, but would not reverse her symptoms or improve her condition beyond the point of maximum medical recovery"). The question of whether further treatment will allow the seaman to return to work is simply irrelevant to assessing whether the seaman has reached MMI. *Barnes v. Sea Hawaii Rafting, LLC*, No. 13-02, 2018 WL 4854662, at *11 (D. Haw. Oct. 5, 2018); *see also Tullos*, 750 F.2d at 388 (explaining that "[t]he cut-off point for maintenance and cure is not that at which the seaman recovers sufficiently to return to his old job but rather the time of maximum possible cure" (internal quotation omitted)).

None of the cases B&C relies on are to the contrary. (B&C Brief at 7–9; Doc. No. 87 ("B&C Reply") at 3–4). While these cases establish that the maintenance and cure obligation does not encompass palliative cure, they do not suggest that maintenance and cure may be terminated merely because the seaman's condition is permanent. *See Farrell v. United States*, 336 U.S. 511, 513, 518 (1949) (finding seaman was not owed continued maintenance and cure where he was "totally and permanently blind and suffer[ing] post-traumatic convulsions . . . without possibility of further cure" and continued treatment would only alleviate headaches and epileptic convulsions); *Cox v. Dravo Corp.*, 517 F.2d 620, 626–27 (3d Cir. 1975) (holding that shipowner did not owe maintenance and cure where seaman was permanently disabled and treatment would relieve aches and pains but would not improve his condition). As such, in order to terminate the Sullivans' maintenance and cure, B&C must show that the Sullivans have reached MMI.

B&C does not carry this burden. First, although Dr. Napoli and Dr. Turner indicate that the Sullivans' PTSD is permanent and that they will be unable to return to work as commercial fishermen, their assessments do not indicate that either brother has reached the point of MMI. Rather, in his assessments of both brothers, Dr. Napoli specifically indicated that further individual

psychotherapy was necessary to obtain MMI. (Doc. No. 79-2 at 62; Doc. No. 79-4 at 65). Similarly, Dr. Turner avers that the Sullivans have not reached MMI and that they need further treatment to address the symptoms of their PTSD. (Doc. No. 86-2 at ¶ 4). Given that neither Dr. Napoli nor Dr. Turner clearly state that such treatment will lead to permanent improvements in either brother's condition, there is some ambiguity as to whether such treatment is truly curative or merely palliative, but at this stage such ambiguity must be resolved in favor of the seamen.

Second, B&C readily concedes that its own expert's reports create a genuine issue of material fact as to the permanency of the Sullivans' PTSD. (B&C Brief at 9; B&C Reply at 5). Contrary to Dr. Napoli and Dr. Turner, Dr. Barr indicates neither brother is likely to suffer from PTSD in the long-term. (Doc. No. 79-5 at 6; Doc. No. 79-6 at 6). As the decision to terminate maintenance and cure must be "unequivocal," the unresolved conflict between these medical diagnoses is entirely sufficient to defeat B&C's motion, even if its preferred legal standard applied.[2] *See Tullos*, 750 F.2d at 388 (explaining that it is "the medical, not the judicial, determination of permanency that terminates the right to maintenance and cure" (internal quotation omitted)). If anything, Dr. Barr's rosy prognostications about the Sullivans' long-term improvement more clearly indicate that the brothers have not reached MMI than anything submitted by Dr. Napoli and Dr. Turner. Since the record is at most ambiguous as to whether the Sullivans have reached MMI, B&C's Motion must be denied.

## IV. CONCLUSION

---

[2] Since B&C itself acknowledges this genuine dispute of material fact, one may fairly wonder why it believes it has any chance of terminating its maintenance and cure obligation. To this point, B&C argues that it should be allowed to rely on the Sullivans' factual assertions, and the Sullivans should be bound by their own factual assertions. (B&C Brief at 9). Such an argument would hold water if B&C intended to disregard Dr. Barr's reports and rely exclusively on the Sullivans' view of the facts. But B&C expressly indicates that it intends to rely on Dr. Barr and challenge the Sullivans' factual assertions for purposes of defeating their other damages claims. Because B&C cannot have it both ways, it cannot terminate its maintenance and cure obligations so long as it intends to offer evidence suggesting that the Sullivans have not reached MMI, regardless of the evidence put forward by the Sullivans.

For the forgoing reasons, B&C's Motion is **DENIED**. An Order follows.

Dated: 2/4/2020  /s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge